# No. 13-35390

IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

─────────────

**HUONG HOANG, an individual,**
*Plaintiff—Appellant,*

*v.*

**AMAZON.COM, INC., a Delaware corporation;**
**IMDB.COM INC., a Delaware corporation**
*Defendants—Appellees.*

─────────────

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON
MARSHA J. PECHMAN, DISTRICT JUDGE • CASE NO. 11-CV-01709-MJP

─────────────

# APPELLANT'S REPLY BRIEF

─────────────

**HORVITZ & LEVY** LLP
BARRY R. LEVY
MARK A. KRESSEL
15760 VENTURA BOULEVARD, 18TH FLOOR
ENCINO, CALIFORNIA 91436-3000
(818) 995-0800

**NEWMAN DU WORS** LLP
DEREK A. NEWMAN
KEITH P. SCULLY
CHARLOTTE KUHN
1201 THIRD AVENUE, SUITE 1600
SEATTLE, WASHINGTON 98101
(206) 274-2800

ATTORNEYS FOR APPELLANT
**HUONG HOANG**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................iii

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................4

I. THE DISTRICT COURT ABUSED ITS DISCRETION BY
REFUSING TO REOPEN DISCOVERY WHEN PRIOR
COUNSEL'S ABANDONMENT AND GROSS NEGLIGENCE
WAS DISCOVERED .......................................................................4

    A. A litigant is not responsible for the actions of someone
who has ceased being her attorney in any meaningful
sense ......................................................................................4

    B. IMDb's claim that Dozier did not effectively abandon
Hoang is contrary to the record and illogical .........................8

    C. Reopening discovery would not have unduly prejudiced
IMDb; not reopening clearly prejudiced Hoang ...................12

    D. The proposed discovery was critical .....................................14

II. THE JURY INSTRUCTIONS ERRONEOUSLY AND
PREJUDICIALLY PUT THE BURDEN ON HOANG TO
PROVE SHE DID NOT MATERIALLY BREACH THE
AGREEMENT ...............................................................................17

    A. Putting the burden on the plaintiff to prove she was not
in material breach of the contract she seeks to enforce is
the exception, not the rule, and the trial court erred in
placing that burden on Hoang ..............................................17

    B. IMDb cannot show it is more probable than not that the
jury's verdict would have been the same without the
erroneous instruction ...........................................................23

1. This verdict does not show that the result would have been the same without the instructional error ... 23

2. Prejudice is likely because the jury instruction added an element to Hoang's cause of action ............. 25

3. IMDb's analysis of the evidence does not show that the error is more probably than not harmless ........... 26

CONCLUSION ......................................................... 35

STATEMENT OF RELATED CASES ..................................... 36

CERTIFICATION OF COMPLIANCE WITH RULE 32(A) ................ 37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Brar v. Thrifty Payless, Inc.*,
   461 Fed. Appx. 536 (9th Cir. 2011)...................................................20

*Brar v. Thrifty Payless, Inc.*,
   No. C08-1777RSM, 2010 WL 958559
   (W.D. Wash. Mar. 12, 2010) ............................................................21

*Brown v. Vance*,
   637 F.2d 272 (5th Cir. 1981)............................................................12

*Caballero v. City of Concord*,
   956 F.2d 204 (9th Cir. 1992).......................................................24, 25

*Clem v. Lomeli*,
   566 F.3d 1177 (9th Cir. 2009).....................................................24, 25

*Cmty. Dental Servs. v. Tani*,
   282 F.3d 1164 (9th Cir. 2002).....................................................4, 5, 6

*Cohen v. Cowles Media Co.*
   501 U.S. 663 (1991)..........................................................................34

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000)..........................................................13

*Cox Broad. Corp. v. Cohn*,
   420 U.S. 469 (1975)..........................................................................34

*De Blasio v. Town of Kittitas*,
   356 P.2d 606 (Wash. 1960) ..............................................................18

*Downs v. Smith*,
   13 P.2d 440 (Wash. 1932) ................................................................20

*Estate of Barabin v. AstenJohnson, Inc.*,
   __ F.3d ___, Nos. 10-36142, 11-35020, 2014 WL 129884
   (9th Cir. Jan. 15, 2014) ....................................................................23

iii

*Gantt v. City of Los Angeles,*
    717 F.3d 702 (9th Cir. 2013) ...................................................... 23, 26

*Guy Mitchell & Betty J. Mitchell Family Trust v. Artist*
    *Rights Enforcement Corp.,*
    No. 11-CV-0024-TOR, 2013 WL 890478
    (E.D. Wash. Mar. 8, 2013) ................................................................ 21

*Hickman v. Taylor,*
    329 U.S. 495 (1947) ............................................................................ 7

*Hillis v. Heineman,*
    626 F.3d 1014 (9th Cir. 2010) .......................................................... 15

*Holland v. Florida,*
    560 U.S. 631 (2010) ............................................................................ 6

*Lambert v. Ackerley,*
    180 F.3d 997 (9th Cir. 1999) ............................................................ 25

*Latshaw v. Trainer Wortham & Co.,*
    452 F.3d 1097 (9th Cir. 2006) ............................................................ 6

*Lockheed Martin Co. v. Network Solutions, Inc.,*
    194 F.3d 980 (9th Cir. 1999) ............................................................ 13

*Mackey v. Hoffman,*
    682 F.3d 1247 (9th Cir. 2012) ........................................................ 5, 6

*Maples v. Thomas,*
    132 S. Ct. 912 (2012) ........................................................ 4, 5, 6, 11, 12

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha,*
    218 F.R.D. 667 (C.D. Cal. 2003) ........................................................ 5

*Minnick v. Clearwire US, LLC,*
    683 F. Supp. 2d 1179 (W.D. Wash. 2010) ........................................ 21

*Mockler v. Multnomah County,*
    140 F.3d 808 (9th Cir. 1998) ............................................................ 25

*Myers v. Shekter (In re Hill),*
    775 F.2d 1385 (9th Cir. 1985) .............................................................. 8

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.,*
    254 F.R.D. 568 (N.D. Cal. 2008) ...................................................... 15

*Readylink Healthcare v. Lynch,*
    440 F.3d 1118 (9th Cir. 2006) ............................................................ 34

*Reynolds Metals Co. v. Electric Smith Construction*
    *& Equipment Co.,*
    483 P.2d 880 (Wash. Ct. App. 1971) ................................................ 21

*Sanders v. City of Newport,*
    657 F.3d 772 (9th Cir. 2011) .......................................... 23, 24, 25, 26

*Shoen v. Shoen,*
    5 F.3d 1289 (9th Cir. 1993) ................................................................. 7

*Solomon v. N. Am. Life & Cas. Ins. Co.,*
    151 F.3d 1132 (9th Cir. 1998) ........................................................... 13

*State v. Cross,*
    132 P.3d 80 (Wash. 2006) .................................................................... 7

*Stonecrest Partners, LLC v. Bank of Hampton Roads,*
    770 F. Supp. 2d 778 (E.D.N.C. 2011) ................................................ 8

*U.S. Fid. & Guar. Co. v. Lee Invs. LLC,*
    641 F.3d 1126 (9th Cir. 2011) ........................................................... 20

*Wallace Real Estate Inv., Inc. v. Groves,*
    881 P.2d 1010 (Wash. 1994) ............................................................. 20

*Walter Implement, Inc. v. Focht,*
    730 P.2d 1340 (Wash. 1987) ............................................................. 18

*Webber v. Mefford,*
    43 F.3d 1340 (10th Cir. 1994) ............................................................. 8

*Willener v. Sweeting,*
    730 P.2d 45 (Wash. 1986) ................................................ 18, 19, 21, 22

v

*Wise v. Farden*,
  332 P.2d 454 (Wash. 1958) ............................................................... 18

*Wlasiuk v. Whirlpool Corp.*,
  914 P.2d 102 (Wash. Ct. App. 1996)................................................. 18

## Rules

Fed. R. Civ. P.
  26(b)(1) ........................................................................................... 15
  68 ....................................................................................................... 6

Fed. R. Evid.
  402 ................................................................................................... 15
  403 ................................................................................................... 15

Wash. Rules of Prof'l Conduct R. 1.2 cmt. 2 ..................................... 7

## Miscellaneous

25 David K. DeWolf et al., Washington Practice Series:
  Contract Law & Practice § 10:3 (2012) ............................................ 18

Share Definition, Merriam-Webster.com,
  http://www.merriam-webster.com/dictionary/share ......................... 34

6A Washington Practice Series: Washington Pattern
  Jury Instructions–Civil (6th ed. 2013)
  WPI 300.02, cmt.................................................................. 18, 22, 23
  WPI 300.03, cmt................................................................................ 22

13 Williston on Contracts § 38:8 (4th ed. 2013)............................... 19, 20

IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

═══════════════

**HUONG HOANG, an individual,**
*Plaintiff—Appellant,*

*v.*

**AMAZON.COM, INC., a Delaware corporation;**
**IMDB.COM INC., a Delaware corporation**
*Defendants—Appellees.*

═══════════════

# APPELLANT'S REPLY BRIEF

═══════════════

## INTRODUCTION

This is a breach of contract action in which an actress, Ms. Hoang, claims a subsidiary of Amazon, IMDb, breached its Subscriber Agreement and Privacy Notice (collectively, the agreement). Hoang claims IMDb improperly used credit card information she provided solely for payment processing and shared it with a third party to obtain and publish her private information without her consent. This case presents a clash between the culture of Hollywood, which values the autonomy to shape one's theatrical persona so as to maximize one's marketability, and the

1

culture of internet companies, which value the unrestricted flow of personal information, sometimes over the sanctity of their own subscriber agreements, and often at the expense of individual privacy. The jury was asked to sort through conflicting accounts of what occurred from these very different perspectives and determine who is legally responsible. Yet two erroneous district court rulings prevented Hoang from meaningfully presenting her side of the story to the jury:

1. The district court abused its discretion in refusing to allow Hoang to reopen critical discovery that was abandoned through the illness and gross neglect of her prior counsel, John Dozier. IMDb attempts to justify the refusal to reopen on the grounds that it is appropriate to penalize Hoang for her prior counsel's gross neglect unless he caused an involuntary dismissal of her case. IMDb is wrong. As the Supreme Court and this Court have held, a litigant will not be responsible for the actions of an attorney who has effectively abandoned her. Here, Dozier's abandonment of discovery was, in effect, fatal to Hoang's case. Whether the abandonment of the client by the attorney results in dismissal or an inability to prevail at trial, the result is the same. Thus, what IMDb offers is a distinction without a difference. IMDb goes on to speculate that

Dozier's misconduct was not the result of his debilitating fatal illnesses, but rather a "strategy" that Hoang supposedly agreed with until she rejected it upon his death. This defies logic. It was Hoang who first proposed to Dozier the dozen probative witnesses that Dozier eventually stipulated with IMDb to drop to avoid his having to defend their depositions. And, IMDb's contention that Dozier's forfeiting key experts and sleeping at his client's deposition represented any "strategy" is simply implausible.

2. As to Hoang's instructional error argument, IMDb responds that the jury instructions correctly placed the burden on Hoang, as plaintiff, to prove she was not in material breach of the agreement. IMDb's understanding of Washington law is, however, backwards: the general rule in Washington is that IMDb, as the *defendant*, must prove as an *affirmative defense* that the plaintiff cannot recover because she materially breached the contract. The exception to that rule, which does not apply here, is for contracts, like real estate purchase agreements, that make the plaintiff's performance a condition precedent to the defendant's obligation.

IMDb also argues that if the instructions were wrong, there was no prejudice. IMDb's hypothesis that the jury would have had to reach the

same result regardless of the instruction is not supported by the record and makes no sense. In light of the evidence of Hoang's efforts to avoid disclosing her birth date, she clearly was not giving IMDb permission for its actions. Rather, the record shows it is likely that the jury would have found in Hoang's favor if it had been properly instructed that IMDb had the burden to prove that Hoang materially breached the agreement.

The judgment should be reversed and the case remanded so that it can be meaningfully tried on its merits.

## ARGUMENT

### I. THE DISTRICT COURT ABUSED ITS DISCRETION BY REFUSING TO REOPEN DISCOVERY WHEN PRIOR COUNSEL'S ABANDONMENT AND GROSS NEGLIGENCE WAS DISCOVERED.

### A. A litigant is not responsible for the actions of someone who has ceased being her attorney in any meaningful sense.

The Supreme Court has embraced the doctrine—long established in this Court—that while a client may be held accountable for her counsel's ordinary negligence, "when an attorney abandons his client, . . . the principal-agent relationship is severed and the attorney's acts or omissions 'cannot be fairly attributed to [the client].'" *Maples v. Thomas*, 132 S. Ct. 912, 914-15 (2012); *accord Cmty. Dental Servs. v. Tani*, 282 F.3d 1164,

1169-71 (9th Cir. 2002); *see* AOB 36-40.[1] "Relief in such a case is justified because gross negligence by an attorney . . . 'vitiat[es] the agency relationship that underlies our general policy of attributing to the client the acts of [her] attorney." *Mackey v. Hoffman*, 682 F.3d 1247, 1251 (9th Cir. 2012). Hoang's opening brief demonstrated that under these principles, the district court abused its discretion in denying relief to Hoang. (AOB 34-50.)

IMDb claims that Hoang's supporting authorities are inapposite because they all involve default judgments or involuntary dismissals. (AB 27-30.) Not so. Hoang cited *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 672-74 (C.D. Cal. 2003), which thoroughly analyzed and persuasively concluded that gross negligence or virtual abandonment should constitute good cause to amend a scheduling order to extend the discovery cut-off and other dates. (AOB 40.) Moreover, regardless of their procedural context, the rule of *Maples*, *Tani*, and *Mackey* is rightly applicable in the context of a motion to reopen discovery.

---

[1] This brief uses the following abbreviations: Hoang's Opening Brief (AOB); IMDb's Appellee's Answering Brief (AB); Excerpts of Record (ER); Supplemental Excerpts of Record (SER); Further Excerpts of Record (FER); Brief of Amici Curiae in Support of Plaintiff-Appellants by SAG-AFTRA and WGA. (SAG and WGA ACB).)

This is because, just as in the default/dismissal setting, when counsel's abandonment causes his client to forfeit discovery, "'[c]ommon sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word.'" *Maples*, 132 S. Ct. at 923 (quoting *Holland v. Florida*, 560 U.S. 631, 659 (2010) (Alito, J., concurring)).

IMDb argues that in *Latshaw v. Trainer Wortham & Co.,* 452 F.3d 1097 (9th Cir. 2006), this Court cabined *Tani* to cases involving defaults or involuntary dismissals. (AB 30.) IMDb is wrong. *See Mackey*, 682 F.3d at 1251-53 (extending *Tani* to habeas). *Latshaw* merely held it was inappropriate to extend *Tani*'s rationale to a motion to withdraw an acceptance of judgment (*i.e.*, a settlement) under rule 68 of the Federal Rules of Civil Procedure. *Latshaw* reasoned that *Tani* was inapplicable where a plaintiff accepted a settlement offer after receiving negligent legal advice because a client must take an independent role in agreeing to settle. *Latshaw*, 452 F.3d at 1101-04. Furthermore, public policy favors enforcing settlement agreements. *Id.*

*Latshaw*'s rationales for declining to extend *Tani* are inapplicable here. Hoang seeks relief from her attorney's abandonment of discovery, an

6

area in which, unlike settlement acceptance, attorneys take the lead and lay clients are not expected to exercise independent judgment and strategic control. *See State v. Cross*, 132 P.3d 80, 92 (Wash. 2006) ("Generally, the client decides the goals of the litigation and whether to exercise some specific constitutional rights, and the attorney determines the means."); Wash. Rules of Prof'l Conduct R. 1.2 cmt. 2 ("Clients normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to accomplish their objectives, particularly with respect to technical, legal, and tactical matters."). Furthermore, public policy favors completing discovery so that a case can be meaningfully tried on its merits. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."); *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) ("[The] broad right of discovery is based on the general principle that litigants have a right to every man's evidence, and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." (internal quotation marks and citations omitted)).

IMDb relies on *Myers v. Shekter (In re Hill)*, 775 F.2d 1385, 1387 (9th Cir. 1985) for the general rule that an attorney's negligence may be imputed to his client (AB 29), but *Hill* actually supports Hoang. The *Hill* court *refused* to affirm a district court's order dismissing a case as a sanction for the litigant's attorney's failure to file a brief, because "the default was the fault of the attorneys and not the litigant. Yet the impact of the sanction imposed is primarily against the client." *Hill*, 775 F.2d at 1387. *Hill* held that the district court's dismissal was an abuse of discretion and remanded for the court to consider lesser sanctions. *Id.*

Finally, IMDb's reliance on *Webber v. Mefford*, 43 F.3d 1340 (10th Cir. 1994) and *Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778 (E.D.N.C. 2011) is misplaced. In those cases, the plaintiffs sought to reopen discovery solely because their new counsel recommended a new strategy—there was no allegation that prior counsel's performance was grossly negligent.

## B. IMDb's claim that Dozier did not effectively abandon Hoang is contrary to the record and illogical.

IMDb argues that Hoang filed her motion to reopen discovery not because her new lead counsel discovered that prior counsel had abandoned

8

discovery, but because Hoang suddenly, inexplicably disagreed with prior counsel's "strategy decisions." (AB 32.) This theory is contradicted by the facts, supported only by speculation, and internally inconsistent.

First, IMDb ignores the undisputed fact that Dozier was contending with heart surgery, brain surgery, daily dialysis, kidney removal, and treatment for numerous infections. (2 ER 266; 3 ER 319; see AB 31-32.) IMDb offers no plausible basis to believe Dozier competently represented Hoang under these conditions. Furthermore, IMDb does not address the authorities Hoang cited recognizing that serious illness of counsel is a reason not to penalize a litigant for her counsel's gross negligence or abandonment. (*Compare* AOB 38-39, *with* AB iv-vii.)

IMDb's speculation that Dozier's conduct was actually a "strategy" Hoang and Newman initially embraced but later rejected lacks evidentiary support and is refuted by the declarations Hoang and her two new lead attorneys submitted. (*See* 2 ER 262-64, 265-67; 3 ER 318-19, 320-21.) And, while IMDb has taken every opportunity to tarnish *Hoang's* credibility, IMDb has never claimed Hoang's *attorneys* are not credible. (*E.g.*, AB 3, 5, 15-16, 23-24; 5 ER 1136-39.) These declarations showed Dozier: (1) failed to put forward experts despite the fact that Hoang's case

required an economic expert to show lost future earnings and an industry expert to show how IMDb's unauthorized conduct would damage Hoang's marketability in an industry beset by ageism; and (2) in order to avoid having to defend their depositions, stipulated with IMDb not to present at trial twelve witnesses that Hoang herself had asked Dozier to use— including Dozier's withdrawal of a probative declaration submitted by the General Counsel of the Screen Actors Guild, who was willing to testify at trial. (2 ER 262-64, 265-67; 3 ER 318-19, 320-21; *see* 2 ER 26-30, 183-85, 244-47; SAG and WGA ACB 2, 19.) Dozier acted against Hoang's express direction. (2 ER 263-64, 266; 3 ER 319, 320.)

IMDb's argument is also internally inconsistent. Before the trial court, IMDb complained that Dozier's discovery strategy was to delay and neglect. (3 ER 295; see 2 ER 89-92.) Now, before this Court, IMDb claims that Dozier was busily "overseeing the litigation, meeting filing deadlines, and managing active discovery." (AB 32.) Furthermore, IMDb's contention that Hoang and new lead counsel agreed with Dozier's "strategy" but disavowed it as soon as Dozier died is nonsensical. (AB 5, 24, 32, 34.) It was Hoang who suggested using the witnesses that Dozier excluded and/or withdrew (2 ER 263-64; 3 ER

320)—why would she embrace a strategy that prevented her from gathering evidence from her own witnesses?

IMDb claims that Dozier relied on his two associates to "actively litigate[] the case on Hoang's behalf." (AB 31.) However, neither associate was admitted before the district court to represent Hoang. (3 ER 319.) Thus, these associates lacked "the legal authority to act on [Hoang's] behalf," and could not bind Hoang with their conduct. *Maples*, 132 S. Ct. at 925-26. IMDb's own record citations show that only Dozier appeared at hearings and signed filings, while his associate sent meet-and-confer emails stalling for time on discovery deadlines. (AB 31; 2 ER 48, 102, 124-28, 206-08; SER 23-24.) The obvious explanation is that Dozier relied on two inexperienced associates to maintain the illusion he was actually prosecuting Hoang's case, while in truth he was literally and figuratively sleeping through the proceedings. (See 2 ER 263 (¶ 7); 3 ER 308 (¶ 5) (Dozier slept through Hoang's deposition while junior associate defended).)

Finally, IMDb suggests Hoang should be held accountable for Dozier's gross negligence because new lead counsel, Newman, had been local counsel. (AB 33-34.) However, the reality of modern legal practice is that local counsel frequently serves solely to facilitate lead counsel's

11

appearing *pro hac vice* and complying with local filing rules. *See Maples*, 132 S. Ct. at 919, 926. Newman testified that this is exactly how Dozier engaged his firm. (3 ER 318-19.) The activities IMDb claims Newman undertook—co-signing the complaint, allowing the firm name on Dozier's filings, sharing office space for depositions—are routine services provided by local counsel; they do not show the firm took any active role in the case. (AB 33-34.)

Often, the simplest explanation is the best. *See Brown v. Vance*, 637 F.2d 272, 281 (5th Cir. 1981). The simplest explanation is that Dozier abandoned Hoang's case due to his illnesses and used his associates to cover his tracks. The ramifications of Dozier's gross negligence were not revealed until he died and new lead counsel reviewed the file. Under these circumstances, the district court abused its discretion denying Hoang's motion to reopen.

## C. Reopening discovery would not have unduly prejudiced IMDb; not reopening clearly prejudiced Hoang.

As Hoang previously explained, while IMDb would not have faced prejudice from reopening discovery, Hoang suffered substantial prejudice

because she was forced to trial without key evidence she asked her prior counsel to develop. (AOB 43-46.)

IMDb contends reopening discovery after the cutoff is prejudicial per se. (AB 35.) However, IMDb's authorities are distinguishable because in those cases, the plaintiff moved to add a new claim that would require delving into an entirely new, previously irrelevant, area of discovery after discovery was otherwise meaningfully completed. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93, 1295 (9th Cir. 2000); *Lockheed Martin Co. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1138-39 (9th Cir. 1998). Here, Hoang merely asked to reopen discovery to complete unfinished investigations within the very subject areas that were already at issue. There was no prejudice under these circumstances, and no unfairness in preventing IMDb from opportunistically seizing on Dozier's inaction to corner Hoang into forfeiting key evidence.

IMDb argues that Hoang's proposal would have disrupted the trial date by pushing the discovery deadline close to the dispositive motion deadline. (AB 36.) This is sheer speculation. Hoang purposefully structured her September 20, 2012 request for relief so as not to disrupt

the trial deadline, months away on April 8, 2013. (2 ER 255-58, 261 to 261-A.)

IMDb claims that Hoang's proposal was "unfairly one-sided" and "did not allow for any additional discovery by IMDb." (AB 36.) But IMDb admits that Hoang's proposal provided for an opportunity for IMDb to disclose rebuttal experts and to depose Hoang's witnesses. (*Id.*) As for the supposed "additional discovery" that IMDb would allegedly have been denied, IMDb has never articulated *any* additional discovery that it would have needed. (3 ER 293-305; AB 34-37.)

Finally, IMDb complains of the supposed "additional costs" of reopening discovery. (AB 36-37.) However, incurring the costs to conduct discovery of witnesses IMDb expected Hoang to bring to trial—as opposed to saving those costs because Hoang's attorney was too sick to defend their depositions—can hardly be considered unduly prejudicial.

## D. The proposed discovery was critical.

The proposed discovery would have provided Hoang critical evidence to prove causation, breach, and damages, and would have bolstered her credibility. (AOB 44-46.) IMDb's claim that the proposed discovery was irrelevant or "would not have helped Hoang" is wrong. (AB 37-41.) First,

14

IMDb never argued before the trial court that Hoang's proposed discovery was irrelevant or unhelpful. (3 ER 293-305.) Thus, this argument is waived. *Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010).

Even on its merits, however, this argument fails. IMDb claims Hoang's motion to reopen discovery was "largely geared" towards her Consumer Protection Act claim. (AB 38.) Not really. Hoang's motion sought the discovery "to prevail on both her breach of contract and CPA claims." (SER 4-6; 2 ER 261.)

Next, IMDb quotes the district court's ruling that "unless there is testimony about her being discriminated against in a particular case at a particular time as a result of [IMDb's] posting, it's not relevant." (AB 39 (quoting 4 ER 855).) IMDb's use of this quote is misleading, as this was not from the ruling on the discovery motion but rather a hearing on a subsequent motion in limine concerning the admissibility of trial evidence. (4 ER 812-13, 854-60.) "Relevancy for discovery is flexible and has a broader meaning than admissibility at trial." *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582-83 (N.D. Cal. 2008); *see* Fed. R. Evid. 402, 403; Fed. R. Civ. P. 26(b)(1). Thus, the ruling on admissibility is not instructive on Hoang's discovery motion. Rather, it

demonstrates that denying Hoang's discovery motion had the direct prejudicial result of preventing Hoang from meaningfully presenting her theories to the jury precisely because she was prohibited from gathering the evidentiary foundation for her claims. Indeed, at the same in limine hearing, the court ruled that Hoang could not present evidence of ageism in Hollywood unless she could "show a direct link" between that evidence and her case, such as "someone you have put together as an expert" to testify about ageism in Hollywood. (4 ER 859-60.) Yet Hoang's motion to reopen discovery *did* specifically propose disclosing "an industry expert, director Gil Junger, to testify to IMDb's wide use by casting professionals, and to testify that disclosing actual age can harm an actress's career." (2 ER 261, 266.)

IMDb does not seriously dispute that Hoang's proposed discovery would have provided evidence to support her causation and damages theories, and argues only that it could not have provided evidence to show a breach. (AB 40-41.) Again, IMDb is wrong.

IMDb argues Hoang clearly authorized it to give her billing information to a third party when she instructed IMDb to "go back on your files" and delete her birth date if it had no record verifying that date, and

therefore Hoang's proposed discovery could not have led to any evidence to the contrary. (AB 40-41 & n.3; 6 ER 1165.) However, discovery and admission of evidence that IMDb knew that thousands of actors have protested IMDb's practice of publishing their ages without their consent would have helped the jury to understand that IMDb could not have interpreted Hoang's message as providing permission for IMDb to use her billing information to uncover and publish her age.[2]

## II. THE JURY INSTRUCTIONS ERRONEOUSLY AND PREJUDICIALLY PUT THE BURDEN ON HOANG TO PROVE SHE DID NOT MATERIALLY BREACH THE AGREEMENT.

### A. Putting the burden on the plaintiff to prove she was not in material breach of the contract she seeks to enforce is the exception, not the rule, and the trial court erred in placing that burden on Hoang.

Under Washington law, the claim that a plaintiff may not enforce a contract because the plaintiff materially breached that contract is

---

[2] IMDb further argues Hoang's proposed discovery could not have bolstered the credibility of her testimony that she never gave IMDb permission for its actions because IMDb's interpretation of the agreement makes Hoang's permission unnecessary. (AB 41 & n.3.) IMDb makes a similar argument in support of its claim that the erroneous jury instruction did not prejudice Hoang. (AB 52.) As Hoang explains at *infra* pages 32-33, IMDb's argument lacks merit and was unconvincing even to the district court.

generally an affirmative defense on which the defendant bears the burden of proof. *De Blasio v. Town of Kittitas*, 356 P.2d 606, 608 (Wash. 1960); *Wise v. Farden*, 332 P.2d 454, 456-58 (Wash. 1958); *Wlasiuk v. Whirlpool Corp.*, 914 P.2d 102, 112-13 (Wash. Ct. App. 1996); 25 David K. DeWolf et al., Washington Practice Series: Contract Law & Practice § 10:3 (2012); AOB 51-55. The exception to this general rule is when a contract makes the plaintiff's performance a condition precedent to the defendant's duty to perform. *See Walter Implement, Inc. v. Focht*, 730 P.2d 1340, 1342 (Wash. 1987); 6A Washington Practice Series: Washington Pattern Jury Instructions–Civil 300.02, cmt. (6th ed. 2013) (hereafter WPI). IMDb's brief concedes that "[i]n this case, *neither* party's performance was a condition precedent to the other's performance." (AB 44.) This concession establishes that the general rule applies and the instructions requiring Hoang to prove she did *not* materially breach were incorrect.

IMDb ignores *De Blasio*, *Wise*, and *Wlasiuk*. Instead, IMDb contends that the law in Washington is actually the opposite, hanging its argument on a quotation from *Willener v. Sweeting*, 730 P.2d 45, 49 (Wash. 1986), stating that "[i]f a contract requires performance by both parties, the party claiming nonperformance of the other must establish as a matter of fact

the party's own performance." The meaning of this quote is far narrower than its broad language might suggest. *Willener* was a classic real estate purchase dispute, in which the sales contract required that the purchaser tender earnest money or purchase money and the seller tender clear title on the same date. *Id.* at 47. Thus, when the *Willener* court stated that the burden is on the plaintiff to prove it was not in material breach when "[the] contract requires performance by both parties," it meant *simultaneous* or *concurrent* performance by both parties. As *Willener* explained a few paragraphs later, "[a] vendor selling land may not put the buyer in default until the vendor has offered to perform; the payment of the purchase price and the delivering of the deed are concurrent acts." *Id.* at 50.

As the treatise IMDb cited makes clear, "*a concurrent condition is actually a special type of condition precedent*, involving conditions on both sides of a bilateral contract, each of which must occur to trigger the duty of the other party; and both of which are capable of simultaneous occurrence so that each is considered a condition precedent to the duty of the other party." 13 Williston on Contracts § 38:8 (4th ed. 2013) (emphasis added); AB 47. "They are, indeed, *mutual conditions precedent*." *Id.* (emphasis

added). Thus, although *Willener*'s "nomenclature [was not] perfectly consistent," 13 Williston on Contracts § 38:8, the case's context makes clear that it did not announce, as IMDb contends, a general rule but rather a specific application of the conditions precedent *exception* to that general rule applicable to real estate sales, where the tenders of purchase money and title are to be simultaneously performed. The only other Washington Supreme Court cases IMDb cites are *also* real estate sales agreement disputes. *See Wallace Real Estate Inv., Inc. v. Groves*, 881 P.2d 1010, 1012 (Wash. 1994); *Downs v. Smith*, 13 P.2d 440, 440-41 (Wash. 1932).[3]

None of IMDb's other authorities on this point are Washington Supreme Court opinions. *See U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1133-34 (9th Cir. 2011) ("In analyzing state law in a diversity case, [this Court is] bound by the decisions of the state's highest court."). Nor do they support IMDb's argument. Two of them are merely trial and appellate opinions from the same case, which was another real estate sales dispute. *See Brar v. Thrifty Payless, Inc.*, 461 Fed. Appx. 536, 536-37 (9th

---

[3] IMDb's argument that Hoang's and IMDb's contractual obligations were "concurrent" is based on a misunderstanding of this legal term. (AB 44-45.) "Concurrent conditions" refers to requirements for simultaneous performance, not merely obligations that are ongoing. 13 Williston on Contracts § 38:8.

Cir. 2011) (unpublished); *Brar v. Thrifty Payless, Inc.*, No. C08-1777RSM, 2010 WL 958559, at *1, *8 (W.D. Wash. Mar. 12, 2010). *Guy Mitchell & Betty J. Mitchell Family Trust v. Artist Rights Enforcement Corp.*, No. 11-CV-0024-TOR, 2013 WL 890478, at *3 (E.D. Wash. Mar. 8, 2013), recites the language from *Willener* as dicta within a boilerplate recitation of state law while conducting a choice-of-law analysis. *Reynolds Metals Co. v. Electric Smith Construction & Equipment Co.*, 483 P.2d 880, 882 (Wash. Ct. App. 1971), is not a real estate dispute but concerned an express condition precedent and thus still falls within the exception for conditions precedent. *See id.* at 881-82. Finally, in *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179 (W.D. Wash. 2010), the district court quoted but did not apply *Willener*'s broad language: the plaintiffs were really denied recovery because the contract's provisions on dispute resolution and limitation of damages barred plaintiff's claim.

IMDb's reliance on the WPI is equally misplaced. (AB 42-43.) IMDb argues that because the title of WPI 300.02 includes the phrase "No Affirmative Defense" and the title of WPI 300.03 includes the phrase "With Affirmative Defenses," yet both instructions list plaintiff's not being in material breach as a potential element of the plaintiff's cause of action,

somehow these instructions show that plaintiff's material breach is generally not an affirmative defense. However, the titles of pattern jury instructions are not persuasive authority.

Furthermore, the comments to WPI 300.03 expressly state that regarding the element of plaintiff's material breach, the reader should refer to the comments to WPI 300.02. WPI 300.03 cmt. ("Regarding use of paragraphs (4) and (5), see the Note on Use and Comment to WPI 300.02 . . . ."). The comments to 300.02 state: "[u]nder some contracts, the plaintiff's performance of a contractual obligation is not made a condition precedent to the defendant's performance. For these contracts, the burden of proving whether the plaintiff breached the contract rests with the defendant, rather than the plaintiff, as an affirmative defense." WPI 300.02 cmt.; see AOB 53-54.

IMDb argues that the comments to WPI 300.02 *also* state that " 'if a contract requires performance by both parties, the party claiming nonperformance of the other must establish as a matter of fact the party's own performance.' " (Id.) However, this comment is merely a quotation from *Willener*, and thus refers to concurrent (*i.e.*, to be simultaneously

performed) conditions like those found in the real estate context, and is not surprisingly listed underneath the heading "Conditions Precedent." (Id.)

**B.    IMDb cannot show it is more probable than not that the jury's verdict would have been the same without the erroneous instruction.**

> **1.    This verdict does not show that the result would have been the same without the instructional error.**

When conducting harmless error review of a civil jury trial, "'[t]he burden [is] on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.'" *Estate of Barabin v. AstenJohnson, Inc.*, __ F.3d ___, Nos. 10-36142, 11-35020, 2014 WL 129884, \*5 (9th Cir. Jan. 15, 2014) (en banc). "'We presume prejudice where civil trial error is concerned and the burden shifts to the defendant to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed.'" *Sanders v. City of Newport*, 657 F.3d 772, 781 (9th Cir. 2011); *accord Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013); *see also Barabin*, 2014 WL 129884, at \*5.

A finding of prejudice is warranted where nothing about the verdict indicates that the result would have been the same without the

instructional error.  *See Sanders*, 657 F.3d at 781; *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009); *Caballero v. City of Concord*, 956 F.2d 204, 207 (9th Cir. 1992); AOB 58.  This doctrine is dispositive here because there is no way from the verdict form to rule out the possibility that the jury found that IMDb *did* breach the agreement but, based on the erroneous instructions, delivered a verdict for IMDb because it found that Hoang failed to prove she was not in material breach.  (1 ER 8; 5 ER 1156.) IMDb offers no contrary interpretation of the verdict form and does not distinguish the controlling cases.  (AB iv-vi, 54-55.)

Instead, IMDb argues that since Hoang proposed the verdict form, "any alleged detriment Hoang suffered as a result of the court's use of the form is self-inflicted."  (AB 54.)  IMDb's "invited error" argument misses the point.  Hoang has not argued that the verdict form was erroneous or caused her any "detriment."  Rather, she argues that based on this verdict form IMDb cannot show that the erroneous jury instructions were harmless.

### 2. Prejudice is likely because the jury instruction added an element to Hoang's cause of action.

Hoang's opening brief cited decades of cases holding that it is unlikely that instructional error would be harmless where, as here, the trial court erroneously added an extra element to the plaintiff's burden of proof. *Sanders*, 657 F.3d at 781; *Clem*, 566 F.3d at 1182; *Caballero*, 956 F.2d at 207; AOB 56. Once again, IMDb ignores the controlling cases. (AB 47-5.)

IMDb invokes *Lambert v. Ackerley*, 180 F.3d 997, 1008 (9th Cir. 1999), and *Mockler v. Multnomah County*, 140 F.3d 808, 812 (9th Cir. 1998), as cases in which instructional error was found harmless, but these cases are inapposite. (AB 47-48, 55.) In both cases, all of the key facts were "undisputed." *Mockler*, 140 F.3d at 813-814; *see Lambert*, 180 F.3d at 1008-09. Here, the key facts were quite disputed. (AOB 56-60.) Moreover, in those cases, this Court held that the jury's factual findings of wantonness or malice, which were necessary to the jury's punitive damages verdict, demonstrated harmless error because they showed that the jury had necessarily implicitly also made the findings in the plaintiff's favor regarding the defendants' liability that the instructions erroneously omitted. *Lambert*, 180 F.3d at 1009-10; *Mockler*, 140 F.3d at 814 & n.7.

25

Here, there is no similarly compelling factual finding that necessarily shows the jury would have found in IMDb's favor had it been properly instructed.

### 3. IMDb's analysis of the evidence does not show that the error is more probably than not harmless.

IMDb argues that there was no prejudice because the evidence "allow[ed]" the jury to find in its favor. (AB 48; see AB 51.) However, the test for harmless error is not whether there was sufficient evidence to support a verdict for IMDb but rather whether it is "more probable than not that the jury would have reached the same verdict had it been properly instructed." *Gantt*, 717 F.3d at 707 (internal quotations omitted); *accord Sanders*, 657 F.3d at 781.) IMDb cannot make this showing because the factual issues were not nearly as clear cut as IMDb contends:

**Whether Hoang Materially Breached**. IMDb contends there was "more than enough evidence" to allow the jury to find that Hoang materially breached the agreement regardless of who bore the burden of proof. (AB 48-49.) However, of the eight actions/communications IMDb cites, six of them could not, as a matter of law, have supported a finding that Hoang materially breached:

26

- Item "(1)"—that Hoang impersonated another user and posted a false birth date to her account—occurred in 2004, years before she entered the agreement at issue in 2008. (5 ER 902, 1017-1018, 1024, 1047; 6 ER 1204.) IMDb glosses over this problem by suggesting that Hoang posted the false birth date while she had a two-week trial subscription in 2004, and thus would have been bound by IMDb's terms of use during that subscription, but it is undisputed that the trial subscription was cancelled on June 22, 2004. (5 ER 1024, 1059, 1076-78; 6 ER 1171, 1187-88.) An alleged breach of a prior contract cannot constitute a material breach of a new contract entered into four years later.

- Items "(4)" through "(8)"—concerning the fake ID and doctored passport image—occurred *after* IMDb extracted Hoang's legal name from its billing files and used it to search public records. (5 ER 1049, 1051-53, 1055-56; 6 ER 1191.) Conduct that occurred *after* IMDb breached cannot possibly have justified IMDb's breach.[4]

---

[4] IMDb essentially concedes this point. (AB 49 n.5.)

This leaves only items "(2)" and "(3)"—that Hoang furnished IMDb with a redacted birth certificate and told IMDb that her previous agent/manager had submitted the 1978 birth date. (5 ER 1038-39, 1043-46.) It is highly unlikely, had the jury been properly instructed that IMDb had the burden to prove that Hoang materially breached, that the jury would have found IMDb satisfied its burden with just this evidence. First, IMDb admitted it was unaware that Hoang misrepresented the source of the birth date until *years* after it misused her information. (5 ER 867-68, 1090, 1098-99, 1130, 1134-35, 1137.) The jury was unlikely to find that IMDb was justified in disregarding its privacy policy based on a misrepresentation of which it was completely unaware. Second, it is highly unlikely that the jury would have found that these two minor statements, made in the context of a heated customer service dispute, could constitute a breach that was "serious enough to justify [IMDb] in abandoning the contract." (FER 4, 9.)

**Whether Hoang established causation and damages**. IMDb claims Hoang "now admits" she had insufficient evidence at trial to establish causation or damages. (AB 50.) Not so. Hoang argues only that she would have had significantly stronger evidence had the district court

permitted reopening discovery. (AOB 31, 44-46.) Despite that disadvantage, Hoang still presented sufficient evidence.

Regarding causation, IMDb claims Hoang "could not show a direct link between IMDb's publication of her birthdate and any resulting loss of specific job opportunities." (AB 50.) But, as IMDb agrees, this was not an employment discrimination case (AB 4, 39 n.2, 56), and thus Hoang was not required to show that IMDb caused Hoang to lose a specific opportunity. Rather, Hoang claimed that IMDb's actions damaged her marketability by breaking the professional illusion of her age range and informing her potential employers without her consent that she was approaching forty in an industry with rampant ageism. (2 ER 11-23, 67-82; FER 20, 26-28.) Hoang's evidence supported her claim.[5] (5 ER 874-75, 877-80, 884-886, 904-05, 935-36, 938-39, 943-46, 949-60, 1000, 1001-1006, 1008-09, 1010, 1012, 1014-15; 6 ER 1214, FER 14-15.) Thus, the jury could find that IMDb damaged Hoang's career even though she could not present a casting professional who would testify that he or she denied

---

[5] It is hard to see how IMDb could deny that its actions impacted Hoang's career opportunities in light of its public boasting, as documented by amici, that casting agents use IMDb to filter out job applicants by age. (SAG and WGA ACB 5-19.)

29

Hoang a specific job opportunity after discovering her true age on IMDb.com. *See* 5 ER 943-44, 1015.

Hoang demonstrated that her career was damaged by showing a steady and dramatic drop in acting jobs every year since IMDb published her birth date. (5 ER 884-86, 949-51, 955-57, 960, 1001-09; FER 5-6, 7, 10-11, 21-22, 25-28.)

**Whether IMDb breached the agreement**. As Hoang's opening brief detailed, the jury likely found that IMDb breached the agreement when it extracted confidential information provided solely for credit card payment processing and used it to search a third-party web site without her consent. (AOB 58-60; *see* 6 ER 1180 ("[Y]ou will always receive notice when information about you might go to third parties, and you will have an opportunity to choose not to share the information.").) IMDb argues its customer service manager, the multi-aliased Giancarlo Cairella, testified "without contradiction" that he extracted Hoang's legal name from the subscriber name field in the database and *not* from the cardholder name field. (AB 51.) However, Cairella's carefully prepared testimony elicited during IMDb's examination danced gingerly around this point without

making any clear affirmative statement.[6]  (See 5 ER 1104-06.)
Furthermore, Hoang did contradict Cairella's story, but IMDb
mischaracterizes her testimony.  When Hoang testified she "believed"
IMDb obtained her legal name from her credit card information, she used
the word "believed" in the sense of having personal knowledge—not in the
sense of the Tooth Fairy.  (*See* 5 ER 1032-35.)  Hoang knew she would
never have opened a subscription in her legal name because she was
already registered under her stage name.  (5 ER 1034.)  What IMDb claims
was Hoang's "admi[ssion]" that she did not know for certain how Cairella
got the information was merely her response to IMDb's badgering
questioning, agreeing that "nothing is one hundred percent."  (5 ER 1034-
35.)   It is highly likely the jury would have found IMDb obtained Hoang's
legal name from her credit card information.

Furthermore, Cairella conceded he lacked Hoang's consent for his
actions, in violation of the agreement.  (5 ER 1086 ("Q: Ms. Hoang didn't
give you permission to search the IPS database for her real name, right? A:

---

[6] Furthermore, the IMDbPro receipt shows one listing for "Name," which is
displayed immediately above the cardholder "Billing Address," and one
listing lower down for "Card Holder Name," displayed immediately below
the credit card expiration date.  (6 ER 1171.)  The jury could readily infer
that both listings were the from the cardholder name field.

She didn't specifically mention searching the IPS database, no."), 1089-90, 1098, 1106-07.)

Undeterred by its concession, IMDb argues that the jury could have found Hoang provided consent for IMDb's actions (AB 52) when she told IMDb: "go back on your files . . . . You won't find any proof . . . so please delete [the birth date]." (6 ER 1165 (capitalization omitted); AB 52). It would be practically impossible for the jury to reach that conclusion. The evidence was unequivocal that Hoang had never asked IMDb to do anything except delete her birth date from its site, and that Hoang intended this email to accomplish the same request. (5 ER 934; *see* 5 ER 906, 912-15, 917, 919, 920, 935, 1032.) Furthermore, as the jury no doubt realized, if Hoang had *wanted* IMDb to obtain her true birth date, she could have simply *told* IMDb. She would not have sent IMDb on a scavenger hunt using her billing information to scour public records.

Alternatively, IMDb argues it did not need Hoang's permission for its actions because the agreement gives IMDb the right to use "information you give us" for "responding to your requests . . . improving our site, and communicating with you." (6 ER 1180; AB 52.) However, even the district court, in ruling on similar arguments in a prior motion to dismiss, found

32

that "[t]hese arguments ask the Court to go too far." (2 ER 60; *see also* 4 ER 801-02.) Similarly, there is no reason to believe it is more likely than not that any rational juror would find that under the agreement IMDb had an unfettered right to use Hoang's credit card information and provide it to a third party without her consent for the purpose of obtaining information she wished to keep private. (*See* FER 23-24.) IMDb's position is contrary to the assurances it gives subscribers at the start of the agreement: "IMDb knows that you care how information about you is used and shared, and we appreciate your trust that we will do so carefully and sensibly." (6 ER 1180.)

IMDb argues that the jury would have rejected Hoang's contention IMDb breached the agreement's provisions regarding "sharing" of user information when it used Hoang's legal name to run a search on a third party web site without her consent, because Hoang's legal name was already in the third party's database. (AB 53; AOB 58-60; *see* 6 ER 1180.) IMDb relies on the mistaken assumption that "sharing" is limited to providing information to an entity that it previously lacked. Sharing is also defined as "to partake of, use, [or] experience . . . with others," which is exactly what Cairella did when he put Hoang's legal name into the third

party's search box. Share Definition, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/share (last visited Jan. 30, 2013). Indeed, IMDb's *own* agreement cautions users that "you provide information when you search for a movie, actor or director" on IMDb.com, even though these movies or individuals must already be in the database for IMDb.com to return any search results on them. (6 ER 1182.)

Finally, IMDb invokes its First Amendment rights. (AB 55-56.) But the cases on which IMDb relies are distinguishable because in those cases the information that the defendants published was gleaned entirely from publicly available sources. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975); *Readylink Healthcare v. Lynch*, 440 F.3d 1118, 1121 (9th Cir. 2006). Here, Hoang is not suing merely because IMDb published the birth date it found on the public records site, but because IMDb breached the agreement when it used information Hoang provided solely for payment processing to make the public records search. This case is accordingly nothing like *Cox* or *Readylink Healthcare* and much more like *Cohen v. Cowles Media Co.* 501 U.S. 663, 665-66, 670-72 (1991), which held that the First Amendment did not protect a publisher from a suit for promissory estoppel when it obtained information from a source on the promise that it

would protect the source's confidentiality and then subsequently revealed the source's name. It is not surprising that the district court, in denying IMDb's request for a jury instruction on the First Amendment, called the argument "a non-starter." (FER 2, 18-19.)

## CONCLUSION

For the reasons stated above, in Hoang's opening brief, and *amici*'s briefs, this Court should vacate the judgment and remand for new trial.

February 3, 2014      **HORVITZ & LEVY** LLP
     BARRY R. LEVY
     MARK A. KRESSEL
     **NEWMAN DU WORS** LLP
     DEREK A. NEWMAN
     KEITH P. SCULLY
     CHARLOTTE KUHN

By:  /s/Mark A. Kressel
         Mark A. Kressel

Attorneys for Appellant
**HUONG HOANG**

35

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Hoang is unaware of any related case pending in this Court.

## CERTIFICATION OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS
## [FED R. APP. P. 32(a)(7)(C)]

☒ 1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☒ this brief contains 6,996 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    ☐ this brief uses monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

☒ 2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using MS-Word in 14-point Century Schoolbook font type, or

    ☐ this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

February 3, 2014
_____
Date

/s/Mark A. Kressel
_____
***ATTORNEY NAME***

37

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Signature: <u>s/ Mark A. Kressel</u>